## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------------------------------------------X
                                                    :
MC1 HEALTHCARE, INC.,                               :  Case No.
D/B/A MOUNTAINSIDE TREATMENT CENTER                 :
                                                    :
       Plaintiff,                                   :
                                                    :
-v.-                                                :
                                                    :
UNITED HEALTH GROUP, INC.,                          :
UNITED HEALTHCARE, INC.,                            :
OPTUM, INC., AND                                    :
OPTUMHEALTH, INC.                                   :
                                                    :
       Defendants.                                  :
                                                    :
------------------------------------------------------------------X  November 14, 2017
```

### COMPLAINT

MC1 Healthcare, Inc., d/b/a Mountainside Treatment Center ("Mountainside"),

complains against Defendants (collectively "United") and alleges as follows:

### NATURE OF ACTION

1.      Mountainside is a healthcare provider seeking declaratory, monetary, and

injunctive relief under § 502(a) of the Employee Retirement Security Act (ERISA), codified at

29 U.S.C. § 1132(a) and the common and statutory law of the State of Connecticut.  As

explained in greater detail below, Mountainside is an out-of-network provider that renders

behavioral health treatment to patients under health care plans governed by ERISA and

administered by the Defendants.  As set forth below, defendants may pay Mountainside pursuant

to an assignment.  The Defendants both insure and administer these plans in a manner designed

to defraud Mountainside.

## THE PARTIES

2.      The plaintiff, MC1 Healthcare, LLC is a Connecticut limited liability company.  It operates the Mountainside Treatment Center (previously defined as Mountainside), an alcohol and drug addiction treatment center that has inpatient and outpatient facilities in Canaan, Connecticut and Wilton, Connecticut.  It provides behavioral health treatment to patients.

3.      The defendant, UnitedHealth Group ("UHG") is a major managed health care company incorporated in Delaware with its principal place of business located at 9900 Bren Road East, Minnetonka, Minnesota.  UH Group offers products and services and operates nationally through its wholly owned subsidiaries, UnitedHealthcare, Inc. ("UHC"), and Optum, Inc. ("Optum" and collectively, the "Defendants" or "United").

4.      The defendant, UHC, is a Delaware Corporation and wholly owned subsidiary of UHG, with its principal place of business located at 300 Opus Center, Suite 9900, Minnetonka, Minnesota.  Upon information and belief, UHC sells and administers health benefits plans for commercial enrollees as part of employee benefits plans.

5.      Defendant Optum is a Minnesota corporation and a wholly owned subsidiary of UH Group.  Upon information and belief, Optum is the operating name of United Behavioral Health.  Optum provides support services to UHG through a division known as OptumHealth, Inc. and administers the behavioral health benefits of UHG plans.

6.      Upon information and belief, at all relevant times, the Defendants are Plan Administrators and/or Claims Administrators for group health benefits plans that are governed by ERISA.

**JURISDICTION AND VENUE**

7.      The Court has subject matter jurisdiction over this action based on diversity of citizenship under 28 U.S.C. § 1332(d). The Court also has federal question subject matter jurisdiction arising out of the claims asserted herein with regard to the ERISA claims, pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).  The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

8.      All Defendants are residents of the United States and subject to service in the United States, and the Court therefore has personal jurisdiction over them. The Court also has personal jurisdiction over them pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would all be subject to the jurisdiction of a court of general jurisdiction in Connecticut.  Each Defendant systematically and continuously conducts business in this State, either directly or through their wholly-owned and controlled subsidiaries, are authorized to do business here, and otherwise possess minimum contacts with this State sufficient to establish personal jurisdiction over them.

9.      Venue is also appropriately established in this Court under 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2) because the Defendants conduct a substantial amount of business and wrongful practices in this District, and material portions of the improper conduct and breaches that are the subject of this lawsuit took place here.

**INTRODUCTION**

10.      United has a history of violating applicable law to the detriment of patients and providers, particularly out of network healthcare providers like Mountainside.  It has been investigated by state Attorneys General and Insurance Commissioners and those investigations have led to payments of millions of dollars by United.  For example, New York Attorney General Andrew Cuomo investigated United's use of its fraudulent Ingenix database to set

reimbursement rates for medical providers.  According to the New York Attorney General's office, this database was used to "manipulate[e] . . . reimbursement rates at the expense of patients across the country."  Reimbursement rates were "intentionally skewed" "downward" so United, among others, could increase its profits because "consumers were forced to pay more than they should have."  The U.S. Senate Committee on Commerce, Science and Transportation reached a similar conclusion.

11.     United settled with Attorney General Cuomo by agreeing to spend $50 million to develop a new and more accurate database for handling out-of-network claims. United subsequently agreed to pay $350 million to settle class action lawsuits brought over the issue. Thereafter, Ingenix subsequently changed its name to Optuminsight, an affiliate of defendants.

12.     More recently, United, like other large health insurers, has required its insureds to pay large deductibles and co-insurance payments to providers.  This is a business strategy, putting the burden on healthcare providers to chase their patients for funds, further lowering reimbursement rates for medical care and enriching insurers like United.  Revenues and profits keep increasing.  2017 revenue is expected to exceed 200 billion dollars.  More and more providers are converting to non-participating status.  In other words, like Mountainside, they are out of network.

13.     More recently, in an effort to avoid payment to non-participating providers like Mountainside, upon information and belief, large insurers have caused anti-assignment provisions to be inserted into ERISA plans which insurers contend allow them to decide, in their sole discretion, whether non-participating providers have a claim against the insurer, like United, under ERISA for non-payment, or any claim at all.  In addition, insurers like United claim that even if there is no assignment, the insurer can recoup payments made concerning one patient by

not paying the amounts due for other patients.  This leaves patients facing a potential claim from his or her healthcare provider, like Mountainside, for full payment even though patients have insurance.

14.     In this case, United's drug and alcohol addicted enrollees sought treatment at Mountainside.  Mountainside provided these services as a non-participating provider.  United is now "recouping" those payments by illegally withholding payments due from current patients.  Upon information and belief, this is an ongoing and continuing strategy to obtain premiums and not pay for services rendered.

## FACTUAL ALLEGATIONS

15.     Upon information and belief, UHC provides coverage and administers health care plans for commercial enrollees as part of employee benefits plans that are governed by ERISA.

16.     Upon information and belief, Optum administers behavioral health benefits for commercial enrollees in UHC health plans.

17.     Mountainside has provided and continues to provide behavioral healthcare services to a significant number of clients who are beneficiaries of plans sold and administered by the Defendants.  A significant number of Mountainside clients are beneficiaries of plans administered by the Defendants and have their healthcare services paid through such plans.

18.     Mountainside does not have a contract with the Defendants and is an out-of-network provider.  It receives payments for treatment rendered to the beneficiaries of plans administered by the Defendants through an assignment of benefits by the beneficiaries.

19.     When a beneficiary of a United plan receives treatment from Mountainside, Mountainside issues a bill directly to the Defendants by way of a UB-04 form.  A UB-04 is a uniform billing statement used by medical providers to bill a party for medical claims.  On these

5

forms, Mountainside indicates that the beneficiaries of the Defendants' plans that have received treatment have assigned their benefits to Mountainside.  Thus, it was custom and practice that the Defendants would make payment directly to Mountainside for treatment that beneficiaries of its plans had received.

20.     On or about May 5, 2017, Mountainside received a letter from Kimberly Mausbach, at the Office of Program and Network Integrity at Optum ("Optum Letter"), informing Mountainside that Optum determined that Mountainside was paid for certain ancillary services received by beneficiaries which should have been "bundled" with the residential treatment payments made to Mountainside on behalf of those clients by UHG. Of course, since there is no contractual relationship between Mountainside and United, this statement is, at best, spurious.  In bad faith, United claimed that the charges should have been "bundled" pursuant to a provider agreement between the parties which does not exist.

21.     The Optum Letter stated that if Mountainside did not "refund" the alleged "overpayments," then Optum would begin to deduct the amount it claimed as refunds from future payments to be made by Optum to Mountainside for other patient's claims.  Specifically, the Optum Letter alleged that Mountainside had received overpayments in the amount of $26,034.99 and informed Mountainside that on June 5, 2017, Optum would begin offsetting against future payments for the alleged overpayment amount.  Optum/United has continued and continues this practice.

22.     The Optum Letter provided appeal provisions in the event that Mountainside did not agree with the findings set forth in the letter.  It stated that Mountainside "may submit a rebuttal, in writing, within fifteen days from the date of this latter.  You may include any

6

evidence with this Statement any evidence you believe is pertinent to your reasons why the recoupment should not be put into effect."

23.     On May 25, 2017, Mountainside sent a response letter ("Mountainside Response Letter") appealing the findings of the Optum Letter.  Mountainside explained in the letter as follows:

> A.     Mountainside is a non-participating ("non-par") provider of healthcare services and was not bound by any "bundling" conventions of policies imposed by UHC or Optum;
>
> B.     At the time of admission, Mountainside clients sign a contract with Mountainside in which the client acknowledges that certain ancillary services, such as urine drug screens, pharmacogenetics testing and bloodwork are performed by third-party companies, and that these ancillary services are billed to the client as additional costs.

24.     Optum did not provide a resolution to the Mountainside Response Letter.

25.     Optum instructed UHC to deduct sums due Mountainside for services rendered to Mountainside patients.

26.     On information and belief, Optum and UHC have identified additional alleged overpayments for services that Mountainside provided to beneficiaries of UHC plans dating back to early 2016.  Upon information and belief, UHC and Optum intend to deduct from future payments owed to Mountainside for claims of other beneficiaries of plans administered by the Defendants until these alleged additional overpayments are satisfied.  In addition, upon information and belief, this is an ongoing practice whereby UHC and Optum seek to recoup prior

payments from amounts due for new patients. This constitutes an ongoing scheme to defraud Mountainside.

**FIRST COUNT**
**(Declaratory and Injunctive Relief Pursuant to 29 U.S.C. § 1132(a)(1)(B)**

27.     Mountainside repeats and incorporates by reference paragraphs 1 through 26 above as though fully set forth herein.

28.     The Defendants' prior recoupments and offsets against unrelated claims for benefits, and any future attempts to offset unrelated claims for benefits assigned to the Plaintiff violates ERISA. As an out-of-network "non-par" provider and assignee of benefits, Mountainside was entitled to be paid for the services rendered to plan beneficiaries at the "unbundled" rate submitted to the Defendants. United agreed and paid Mountainside. Thereafter, it claimed an overpayment pursuant to a provider agreement that Mountainside is not a party to.

29.     Mountainside has standing to bring a claim under ERISA because it has been assigned the benefits of the beneficiaries of the ERISA plans administered by the Defendants.

30.     To the extent such administrative remedies existed, Mountainside has exhausted them through the submission of the Mountainside Response Letter. Mountainside does not have access to any of the ERISA plans at issue and relied on United for information concerning any administrative appeal. The only remaining remedy for Mountainside is the civil action set forth in this Complaint.

31.     Pursuant to 29 U.S.C. 1132(a)(1)(B) a participant or beneficiary, may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

32.     Mountainside seeks declaratory relief that the Defendants do not have the legal authority to recoup or offset the alleged overpayments against unrelated claims for benefits and that the Defendants must immediately repay any amounts already deducted from benefits paid to Mountainside.

33.     Mountainside additionally seeks injunctive relief prohibiting the Defendants from engaging in future efforts to offset any alleged overpayments from unrelated claims for benefits assigned to Mountainside.

**SECOND COUNT**
**(Connecticut Unfair Trade Practices Act)**

34.     Mountainside repeats and realleges Paragraphs 1 through 33 of this Complaint as though fully set forth herein.

35.     United is and at all relevant times was engaged in the conduct of "trade and commerce" within the meaning of Connecticut General Statutes § 42-110a et seq. ("CUTPA") and is and was subject to these statutory provisions.

36.     The conduct of United identified in the preceding paragraphs of this Complaint was purposeful and constitutes immoral, unethical, oppressive and/or unscrupulous conduct and/or practices that violates CUTPA.

37.      Specifically, United engaged in a pattern of paying claims on one patient and then using its illegal recoupment method to recover properly paid claims for a prior patient by withholding payments on current patients.  This misconduct not only violated ERISA, but it violated Connecticut law as well, including Conn. Gen. Stat. § 39a-816(15).

38.     In addition, it is part of a pattern and practice of illegal conduct designed to take money and benefits from providers and enrollees to increase revenue and profits.

9

39.      As a result of the foregoing, plaintiffs have sustained substantial ascertainable losses and claims punitive and other damages pursuant to Conn. Gen Stat. § 42-110g et seq.

## THIRD COUNT
### (NEGLIGENT MISREPRESENTATION)

40.      Mountainside repeats and realleges Paragraphs 1 through 39 of this Complaint as though fully set forth herein.

41.      United represented to its insured that the insured had certain coverage and it represented to Mountainside that it would be paid pursuant to that coverage.  United initially paid Mountainside for the services at issue in this Complaint.  In reliance on its actions and representations, Mountainside has continued to provide services to United enrollees.

42.      United negligently made these representations and Mountainside has been damaged as a result.

## FOURTH COUNT
### (PROMISSORY ESTOPPEL)

43.      Mountainside repeats and realleges Paragraphs 1 through 42 of this Complaint as though fully set forth herein.

44.      Mountainside relied on United's promises when it induced Mountainside to continue to treat United enrollees.

45.      As discussed above, United randomly elected to "recoup" payments due on current patients and claims that these recoupments are for "overpayments" on prior patients. This action is inconsistent with United representation that it would pay and its action paying for charges for treatment from prior patients.

46.      Mountainside relied on United's representations and actions in continuing to treat

United's enrollees.

47.     Mountainside has been injured based on United's failure to honor the promises made.

## FIFTH COUNT
### (Unjust Enrichment)

48.     Mountainside repeats and realleges paragraphs 1 through 47 of this Complaint as though fully set forth herein.

49.     As an out of network provider, Mountainside was not and is not required to bundle any services it provides to beneficiaries of plans administered by the Defendants.  It was and is entitled to retain all monies billed to the Defendants for services Mountainside rendered to beneficiaries of its healthcare plans.

50.     The Defendants' retention of wrongfully offset benefits and continued efforts in the future to offset is and will be to Mountainside's detriment.

51.     The Defendants' unlawful taking of recoupments or offsets, if allowed to continue, jeopardizes Mountainside's ability to conduct its programs and operations, and deliver care to Mountainside clients, including beneficiaries of health care plans sold and administered by the Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Mountainside prays for the following relief against the Defendants:

1.     A declaration under 29 U.S.C. § 1132(a)(1)(B) that Defendants do not have the legal authority to reverse and recoup health plan benefits that they previously and voluntarily paid to the Plaintiff as an assignee of benefits;

2.      An injunction under 29 U.S.C. § 1132(a)(3) prohibiting the Defendants, as Plan Administrators or Claims Administrators, from offsetting and/or recouping;

3.      Attorneys' fees as a prevailing party pursuant to 29 U.S.C. § 1132(a) and CUTPA;

4.      A judgment requiring the Defendants to repay to the Plaintiff any amount of benefits previously offset or recouped by the Defendants;

5.      Damages pursuant to Conn. Gen. Stat. § 42-110a et seq., including § 42-110g;

6.      Costs;

7.      Interest; and

8.      Any other relief that this Court deems just and proper.

PLAINTIFF,
MC1 HEALTHCARE, INC. D/B/A
MOUNTAINSIDE TREATMENT CENTER


By: _____/s/ Gregory J. Pepe_____
Gregory J. Pepe (ct03125)
Simon I. Allentuch (ct21094)
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
Telephone 203.821.2000