**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MC1 HEALTHCARE, INC., D/B/A MOUNTAINSIDE TREATMENT CENTER<br><br>       **Plaintiff,**<br><br>  **v.**<br><br>UNITED HEALTH GROUP, INC., *et al.*<br><br>       **Defendants.** | Case No. 3:17-CV-01909-VLB<br><br><br><br><br><br>June 21, 2018 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants UnitedHealth Group Inc., UnitedHealthcare, Inc., UnitedHealthCare Services, Inc., United Behavioral Health, OptumInsight, Inc., Optum, Inc., and OptumHealth, Inc. (collectively, "United") respectfully submit the following Memorandum of Law in support of their Motion to Dismiss Plaintiff's Amended Complaint (D.E. 46) ("Amended Complaint") filed by Plaintiff MC1 Healthcare LLC, d/b/a Mountainside Treatment Center ("Mountainside") for failure to state a claim and lack of subject matter jurisdiction.

## INTRODUCTION

Mountainside brings claims against United under both ERISA and Connecticut law challenging United's recovery of overpayments made to Mountainside. Mountainside's still-vague Amended Complaint is little improved from the original, and should be dismissed for failure to state a claim.[1]

First, Mountainside lacks standing to bring claims on behalf of its patients. The forms Mountainside alleges that it had its patients sign authorize United to route the patients' benefit payments directly to Mountainside, but they do not assign the patients' contractual legal rights to their plan benefits to Mountainside. Moreover, even if the forms did qualify as assignments, the anti-assignment clauses in the plans at issue would nullify those assignments. Finally, even if Mountainside did have standing to assert its ERISA claim, that claim must be dismissed because Mountainside has failed to identify any language in any of the plans at issue that promises to pay benefits for drug and alcohol treatment on an unbundled basis.

Second, Mountainside's state-law claims should also be dismissed because they are preempted by ERISA. Even if they were not preempted, however, Mountainside fails to sufficiently plead its state law claims. For example, Mountainside's conclusory allegations asserting negligent misrepresentation and seeking promissory estoppel—which do not allege a

---

[1] Mountainside's original Complaint (D.E. 1) asserted the same causes of action as its Amended Complaint. United moved to dismiss Mountainside's original complaint on March 26, 2018. *See* Motion to Dismiss (D.E. 28). Mountainside filed an Amended Complaint before responding to United's first Motion to Dismiss, but failed to cure the underlying defects in its allegations.

specific misrepresentation or an explicit promise—are precisely the type of bald and unsupported allegations that the Supreme Court has held fail to meet federal pleading standards.  Likewise, Mountainside's unfair trade practices act claim does nothing more than label United's alleged conduct as an unfair trade practice without explanation.  Mountainside's state law claims should be dismissed.

## BACKGROUND

United administers benefits under various health plans.  Am. Compl. ¶ 19. Mountainside is a healthcare provider that has no contractual relationship with United.  *Id.* ¶¶ 21-22.  Because Mountainside is not itself an insured under any plan and has no contractual relationship with United, it has no entitlement in its own right to receive compensation from United or United-administered plans. Rather, Mountainside claims to be entitled to payments for the services it has rendered by virtue of purported assignments of its patients' rights to plan benefits.  *Id.* ¶ 23.

The Amended Complaint does not identify the patients that allegedly assigned their benefits to Mountainside or the specific services they were provided.  The Amended Complaint does not state how much Mountainside billed for those services, how much it was reimbursed, or how much it believes the terms of the plans entitled the patients to receive.  Indeed, although the Amended Complaint raises primarily plan-based claims, it does not identify any plan provisions pursuant to which Mountainside claims to be entitled to relief.

According to the Amended Complaint, Mountainside received a letter from United on or about May 5, 2017, stating that several claims for which

2

Mountainside had previously been reimbursed were in fact overpaid.  Am. Compl.
¶ 29.  According to the Amended Complaint, the letter asserted that Mountainside
had improperly billed for its services on an "unbundled" basis, when in fact the
services provided to each patient should have been paid as a single "bundled"
amount.  *Id.*  "Unbundling" generally refers to the practice of "billing for each
component of the service instead of billing or using an all-inclusive code[.]"  65
Fed. Reg. 59434, 59439 (Oct. 5, 2000); *see also* 65 Fed. Reg. 70138, 70142 (Dec. 18,
1998) (defining "unbundling" as occurring when a "billing entity uses separate
billing codes for services that have an aggregate billing code").  Mountainside
contends that it was entitled to unbundled reimbursement because it had no
contractual relationship with United.  Am. Compl. ¶¶ 30-31.  But although
Mountainside claims entitlement to reimbursement based on assigned rights
under its patients' plans, the Amended Complaint does not allege that any of its
patients' plans promised to pay benefits on an unbundled basis

    According to the Amended Complaint, Mountainside appealed United's
May 5, 2017 overpayment letter on May 25, 2017.  *Id.* ¶ 31.  The Amended
Complaint alleges that United nonetheless "offset at least $131,723.22."  *Id.* ¶ 33.
And while the Amended Complaint does appear to assert that United was
prohibited from recovering the overpayments through offsets, it does not cite any
plan provision or any provision of law that prohibits this common form of
overpayment recovery.

## <u>ARGUMENT</u>

## I.    MOUNTAINSIDE'S ERISA CLAIM MUST BE DISMISSED.

3

A.   Mountainside lacks standing to bring its ERISA claim.

Congress granted only plan fiduciaries, beneficiaries, and the Secretary of Labor standing to sue under ERISA.  *See* 29 U.S.C. § 1132(a)(2).  Providers, such as Mountainside, fall into none of these categories and thus have no standing to pursue ERISA claims.  *See Sewell v. 1199 Nat'l Benefit Fund for Health & Human Servs.*, 187 F. App'x 36, 39 (2d Cir. 2006).  Aware of this, Mountainside claims to be suing not in its own right, but as an assignee of unidentified patients it treated.  This theory fails both because Mountainside has not adequately pleaded that it obtained assignments of its unidentified patients' ERISA rights, and because—as the Amended Complaint concedes—the vast majority of the plans at issue prohibit Mountainside from being an assignee.  Am. Compl. ¶ 17; *see also infra* at 7-8.

i.   *Mountainside's alleged "assignment" form does not qualify as an assignment.*

Providers can gain standing to sue under ERISA by obtaining valid assignments from their patients of benefits available under their health plans, if the plans permit assignments.  *Prof'l Orthopaedic Assocs., PA v. 1199SEIU Nat'l Benefit Fund*, 697 F. App'x 39, 40 (2d Cir. 2017) ("To proceed in the shoes of a beneficiary, the assignee must show that there is a valid assignment that comports with the terms of the benefits plan.").  The text of Mountainside's alleged "assignment" forms—which Mountainside has now pleaded in its Amended Complaint—shows that those forms do not qualify as assignments.

4

A valid assignment of benefits irrevocably transfers to a provider the assigning patient's contractual legal right to the benefits assigned.[2]  Assignments stand in sharp contrast to "direction of payment" forms, which authorize the insurer to route the patient's benefit payment directly to the provider, but which do not transfer the patient's legal rights under the plan.  *Touro Infirmary v. Am. Mar. Officer*, No. 07-1441, 2007 WL 4181506, at *6 (E.D. La. Nov. 21, 2007) ("[T]he Assignment of Benefits clause . . . is not a full assignment of benefits.  Rather,

_____

[2] *See, e.g.*, 6 Am. Jur. 2d Assignments § 113 ("In an assignment, there is a complete divestment of all rights from the assignor and a vesting of those rights in the assignee."); 6 Am. Jur. 2d Assignments § 122 ("The purpose of an assignment is to divest the assignor of a right.  Thus, once a valid and unqualified assignment is made, all interests and rights of the assignor are transferred to the assignee; the assignor loses all control over the thing assigned, and cannot do anything to defeat the assignee's rights." (internal citations omitted)); *In re Snyder*, 436 B.R. 81, 90 (Bankr. C.D. Ill. 2010) ("[T]he assignee of a contract stands in the shoes of the assignor and takes the assignor's interest subject to all legal and equitable defenses existing at the time of assignment."); *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) ("[A]n assignee stands in the shoes of its assignor and takes subject to those liabilities of its assignor that were in existence prior to the assignment[.]" (quotation omitted)); *Knott v. McDonald's Corp.*, 985 F. Supp. 1222, 1225 (N.D. Cal. 1997) ("An assignment transfers from the assignor to the assignee all of the rights, title or interest owned by the assignor in the subject assigned."), *aff'd*, 147 F.3d 1065 (9th Cir. 1998); *Kroeplin Farms Gen. P'ship v. Heartland Crop Ins., Inc.*, 430 F.3d 906, 911 (8th Cir. 2005) ("When a contract right is assigned, the assignor's right to performance by the obligor is extinguished and the assignee acquires that right."); *Brown v. Blue Cross Blue Shield of Tenn. Inc.*, No. 1:14-CV-00223, 2015 WL 3622338, at *6 (E.D. Tenn. June 9, 2015) ("An assignment divests the patient of their own right to pursue ERISA remedies."), *aff'd on other grounds sub nom. Brown v. BlueCross BlueShield of Tennessee, Inc.*, 827 F.3d 543 (6th Cir. 2016); *Haag v. MVP Health Care*, 866 F. Supp. 2d 137, 141 (N.D.N.Y. 2012) (holding that a valid patient assignment transfers all legal rights to the provider); *Cascades Dev. of Minn., LLC v. Nat'l Specialty Ins.*, 675 F.3d 1095, 1099 (8th Cir. 2012) (recognizing that a "transfer" in which the transferor retains "any control or any power of revocation" does not amount to an assignment (quotation omitted)); *Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 558 (2d Cir. 1976) ("An assignment cannot exist where an assignor retains control over the fund or any authority to collect or any power to revoke.").

the clause simply authorizes direct payment to [the provider] and makes the patient responsible for any charges not paid by the patient's health plan.").

Here, Mountainside's forms clearly did _not_ assign the patients' legal rights to their plan benefits to Mountainside, but rather at most constituted a direction of payment.  While a portion of Mountainside's purported assignment form does contain the generic header "Assignment of Benefits," the operative language appearing under that header merely instructs that the patient's benefit payment be routed directly to the provider.  That section of the form does not state that the insured is "assigning" any rights to the provider, nor does it refer to an irrevocable transfer of rights.  Am. Compl. ¶ 23.  It is the operative language of the form, rather than its header, which determines its legal effect, *see, e.g., Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 256 (2d Cir. 2015) (determining effect of assignments through reference to the "language of the assignments"), and no patient reading the language of Mountainside's form would understand that it irrevocably transferred his or her legal rights to benefits under the plan.  *AvuTox, LLC v. Cigna Health & Life Ins. Co.*, No. 5:17-CV-250-BO, 2017 WL 6062257, at *3 (E.D.N.C. Dec. 7, 2017) ("In order for an assignment under ERISA to be valid, it must be express.  The language of the consent/insurance release relied on by plaintiff as the assignment of benefits is more properly construed as a payment authorization, and this Court agrees with those courts that have held that a payment authorization, without more, is not an assignment of benefits for purposes of ERISA." (internal citation omitted)); *Tex. Gen. Hosp., LP v. United Healthcare Servs., Inc.*, No. 3:15-CV-02096-M, 2016 WL 3541828, at *7 (N.D. Tex.

6

June 28, 2016) ("Many cases have held that a health care provider who receives an assignment from an ERISA plan beneficiary can achieve derivative standing. However, the claim being asserted must have been expressly assigned to the party asserting it." (internal citations omitted)); *see also*, Order re: Motion to Dismiss, *Peterson v. UnitedHealth Group*, Civil No. 14-cv-02101-PJS-BRT, ECF No. 56 (D. Minn., Jan. 23, 2015) (dismissing provider-plaintiffs' ERISA claims because "the authorization signed by each patient of plaintiff . . . does not assign the patient's right to receive benefits . . . but merely gives defendants permission to pay the patient's benefits directly to [Plaintiff].").

Mountainside's direction of payment form does unquestionably authorize United to route benefit payments directly to Mountainside—which United did. It did not, however, convey to Mountainside the patients' legal rights under their plans, and did not give Mountainside standing to sue under ERISA. *See supra* 4-5.

           **ii.**    ***Anti-assignment clauses in the plans invalidated any purported assignments to Mountainside.***

Even if Mountainside's forms were properly construed as attempted assignments of plan benefits, those assignments would nonetheless be invalidated by "anti-assignment provisions" in the plans. Am. Compl. ¶ 17. Mountainside has not provided enough information for United to identify all of the patients and plans placed at issue by the Amended Complaint. United has, however, identified 40 of the patients related to the overpayments listed in Exhibit C to the Amended Complaint. For those 40 patients there are 21 unique plans, and of those plans, 18 contain express anti-assignment provisions. *E.g.*,

Ex. 1 at 1.4 ("you may not assign your right to reimbursement under this Certificate to a non-Network provider without our consent")[3]; Ex. 2 at 2.3 (permitting plan participants to "indicate[] on the claim form that payment should be sent directly to the provider," while prohibiting the transfer of legal rights under the plan to a third party).[4]  Such clauses are routinely enforced, preventing Mountainside from becoming an assignee.  *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 147 (2d Cir. 2017) ("Based on the plain language of this [anti-assignment] provision, [plaintiff's] acceptance of an assignment was ineffective—a legal nullity."); *Prof'l Orthopaedic Assocs.*, 697 F. App'x at 40 ("[A] valid assignment [must] comport[] with the terms of the benefits plan."); *True View Surgery Ctr. One, L.P. v. Mila*, Slip Op., No. 3:17-cv-00177 (AVC) at 13 (D. Conn. Feb. 16, 2018) ("[W]here a health care plan has an anti-assignment provision, acceptance of an assignment is ineffective – a legal nullity." (quotation omitted)); *Merrick v. UnitedHealth Grp., Inc.*, 175 F. Supp. 3d 110, 120 (S.D.N.Y. 2016) ("The anti-assignment provision here is similarly unambiguous. Accordingly, the patients' assignments to Plaintiffs are void pursuant to the unambiguous language of the provision."); *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004) ("[W]e are persuaded by the reasoning of the majority of federal courts that have concluded that an assignment is ineffectual if the plan contains an

---

[3] Unless otherwise stated, all references to "Ex. __" are exhibits to the Memorandum of Law in Support of Defendants' Motion to Dismiss.

[4] The anti-assignment provisions from all of the identified plans are attached as exhibits to this brief.

unambiguous anti-assignment provision."); *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1296 (9th Cir. 2014) (same); *City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc.*, 156 F.3d 223, 229 (1st Cir. 1998) (same); *Advanced Orthopedics & Sports Med. v. Blue Cross Blue Shield of Mass.*, No. 14-7280 (FLW) (LHG), 2015 WL 4430488, at *4 (D.N.J. July 20, 2015) (same).[5]

Aware that the anti-assignment provisions in the relevant plans are fatal to its claims, Mountainside argues—without support—that this Court should ignore them.  Mountainside alleges, without elaboration or explanation, that "until on or about May 5, 2017, it had been United's custom and practice to honor [Mountainside's] Assignments by making payment to Mountainside for the services authorized for a particular [patient]."  Am. Compl. ¶ 28.  But as already explained, United can lawfully honor a patient's request to route a benefit payment directly to a provider even if the provider has not been assigned the patient's legal rights under the plan.  Thus, Mountainside's allegation that United routed benefit payments directly to it, even accepted as true, cannot be construed as a waiver of the plans' anti-assignment clauses.  *Arrowood Indem. Co. v. Gen. Ins. Co. of Am.*, No. HHBCV095013456S, 2010 WL 4885340, at *2 (Conn. Super. Ct.

---

[5] Contrary to Mountainside's pejorative characterization of anti-assignment provisions (Am. Compl. ¶ 17), they are in fact deeply rooted in trust law, the area of law on which ERISA was founded and to which courts routinely turn when interpreting ERISA.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110-11 (1989) (In evaluating ERISA claims, courts "are guided by principles of trust law.");  *McLean v. Cent. States, Se. & Sw. Areas Pension Fund*, 762 F.2d 1204, 1207 (4th Cir. 1985) ("The [] trust agreement's anti-assignment provision is indistinguishable in critical respect from spendthrift provisions . . . .").  Federal decisions upholding anti-assignment clauses in ERISA plans extend back more than two decades.  *See, e.g., Physicians*, 371 F.3d at 1295; *City of Hope Nat'l Med. Ctr.*, 156 F.3d at 229.

Nov. 3, 2010) ("In order to prove waiver, the plaintiff must show that the
defendants engaged in conduct that may reasonably be found to have constituted
[an] *intentional* relinquishment of a known right." (alteration in original; emphasis
added; quotation omitted)).  For that reason, courts routinely reject the argument
that sending a patient's benefit payment directly to a provider waives a plan's
anti-assignment clause.  *Eden Surgical Ctr. v. Cognizant Tech. Sols. Corp.*, 720 F.
App'x 862, 863 (9th Cir. 2018) (no waiver); *Brand Tarzana Surgical Inst., Inc. v. Int'l
Longshore & Warehouse Union-Pac. Mar. Ass'n Welfare Plan*, 706 F. App'x 442,
443 (9th Cir. 2017) (same); *Am. Orthopedic & Sports Med. v. Indep. Blue Cross
Blue Shield*, 890 F.3d 445, 454 (3d Cir. 2018) ("[R]outine processing of a claim
form, issuing payment at the out-of-network rate, and summarily denying the
informal appeal do not demonstrate 'an evident purpose to surrender' an
objection to a provider's standing in a federal lawsuit[.]"); *Neuroaxis
Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 355
(S.D.N.Y. 2013) ("Prior payments to healthcare providers do not create a 'viable
estoppel claim,' however, where ERISA plans unambiguously prohibit
assignments."); *Merrick*, 175 F. Supp. 3d at 121 (direct payment does not waive
enforcement of anti-assignment provisions); *Advanced Orthopedics*, 2015 WL
4430488, at *7 ("[F]ederal courts in New Jersey and other jurisdictions have held,
under various state laws, that sending a direct payment alone does not
constitute waiver of an anti-assignment provision, at least where the plan
authorizes direct payment.").  Thus, even if Mountainside's forms qualified as
attempted assignments—which they do not—the anti-assignment provisions in

the plans at issue conclusively prevent Mountainside from bringing this suit as an ERISA assignee.

          iii.    ***Mountainside does not purport to be acting as an authorized representative of its patients in bringing this suit.***

According to Mountainside's pleadings, a separate section of Mountainside's form authorizes Mountainside to appeal benefits determinations "on . . . behalf" of the patient.  Am. Compl. ¶ 23.  Notably, this provision confirms that the "Assignment of Benefits" section of Mountainside's form does not assign the patients' rights to their plan benefits to Mountainside, as an assignment would divest the patients of their legal rights under the plan, leaving the patients with no appeal rights to designate Mountainside to pursue on their behalf.  ***Univ. of Wis. Hosps. & Clinics Auth. v. Costco Emp. Benefits Program***, No. 15-cv-412-bbc, 2015 WL 9455851, at *3 (W.D. Wis. Dec. 23, 2015) (distinguishing between Authorized Representative status and assignments on the basis that the latter "could have the legal effect of divesting [the patient] of all control over the subject matter of the assignment and all interest in the rights assigned").

Although ERISA does permit patients to designate "authorized representatives" to pursue claims on their behalf, Mountainside has not brought this lawsuit in the name of its patients, nor does it assert anywhere in the Amended Complaint that it is acting as its patients' authorized representative. Instead, Mountainside has brought this lawsuit solely in its own name, seeking benefits for itself, and acting solely in its capacity as a purported assignee. ***See Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.***, 99 F. Supp.

3d 1110, 1145 (C.D. Cal. 2015) ("[A]n 'authorized representative' . . . works on behalf of the patient with respect to a benefit decision or appeal, and an assignee . . . acts on its own behalf as if it was the assignor."). It is also apparent from the Amended Complaint that Mountainside could not possibly be proceeding under the "authorization to appeal" section of its form because it never filed any ERISA benefit appeals on behalf of its patients, instead merely issuing United a single letter in Mountainside's own name objecting to United's proposed overpayment recoupments. Am. Compl. ¶¶ 31, 41. Mountainside thus not only makes no claim to be acting as the authorized representative of its patients in filing this lawsuit, but also could not possibly make such a claim because the lawsuit is outside the scope of the forms' authorization.

> iv. *Mountainside's forms, even if valid, do not allow it to pursue claims for injunctive relief.*

Finally, Mountainside's forms do not purport to assign or authorize Mountainside to pursue claims for forward-looking relief, including injunctive relief. As the Fifth Circuit has recognized, the risk of waste or harm to other plan members inherent in claims for forward-looking relief means that they "are not assigned by implication or by operation of law . . . [and] only an express and knowing assignment of an ERISA fiduciary breach claim is valid." *Tex. Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210, 218 (5th Cir. 1997); *see also Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 F. App'x 846, 852 (11th Cir. 2013) ("The plaintiffs' contention stretches beyond its breaking point the plain meaning of the agreement, which assigns only the right to receive benefits and not the right to assert claims for breach of fiduciary duty

12

or civil penalties."); *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 897 (C.D. Cal. 2012) ("Because the scope of the assignments as pleaded is limited to the right to collect benefits payments directly . . . the Court finds the allegations insufficient to conclude that the Provider Plaintiffs were assigned the right to pursue these [breach of fiduciary duty] claims."); *Encompass Office Sols., Inc. v. Conn. Gen. Life Ins. Co.*, No. 3:11-CV-02487-L, 2012 WL 3030376, at *6 (N.D. Tex. July 25, 2012) ("This Assignment of Benefits unambiguously limits the assignment to recovery of 'medical benefits allowable and otherwise payable' under the plan. . . . The court therefore concludes that Encompass has standing under this assignment to pursue claims for reimbursement of medical benefits but not other claims (regardless of whether the claims are characterized as fiduciary duty claims or otherwise.)"). Mountainside identifies no language in its forms that would allow it to pursue forward-looking claims, either as an assignee or as an authorized representative; on its face, the forms apply only to the routing of payment for particular benefits the patient is due under the plan for the particular services that Mountainside provided.  All of Mountainside's claims for injunctive relief accordingly must be dismissed.

     **B.**    **Mountainside's Count I fails to state a plausible, cognizable claim for injunctive and declaratory relief under ERISA.**

     In Count I, Mountainside purports to seek three forms of relief under ERISA:  "declaratory, monetary, injunctive . . . relief available under ERISA that the Defendants do not have the legal authority to recoup or offset the alleged overpayments against unrelated claims for benefits and that the Defendants must

immediately repay any amounts already deducted[.]"  Am. Compl. ¶ 43.  Count I
must be dismissed because the Amended Complaint fails to state a cognizable
claim under ERISA.

The thrust of Mountainside's Count I appears to be its unsupported
proposition that United was required to pay Mountainside at unbundled rates.
But if Mountainside wishes to claim entitlement to unbundled payment as an
assignee of its patients, it must show that such payment is due under those
patients' plan terms.  *See Afram v. United Food & Commercial Workers Unions &
Participating Emp'rs Health & Welfare Fund*, 958 F. Supp. 2d 275, 279 (D.D.C.
2013) (To show entitlement to benefits under an ERISA plan, a plaintiff must
"identify a specific plan term that confers the benefit in question." (quotation
omitted)).  To be sure, as an out-of-network provider, Mountainside is free to bill
its patients for its services in any lawful manner it chooses.  Although
Mountainside may elect to bill its patients, the patients are only entitled under
ERISA to the specific benefits that are set forth in their plans for the particular
services rendered.  Thus, even if the patients did validly assign Mountainside
their plan benefits (they did not), Mountainside could only obtain by such an
assignment the benefits that the patients were owed under their plans.

Glaringly, Mountainside fails to identify *any* provision of *any* plan that
promises to pay benefits for drug and alcohol addiction treatment on an
unbundled basis.  Indeed, it is highly implausible that any plan would promise to
pay benefits for an unlimited number of individual line items broken out in the
provider's discretion whenever such treatment is provided.  Thus, even if the

14

plans in question do not specify any particular billing methodology—which is the absolute most the Amended Complaint can be construed to allege, *see* Am. Compl. ¶ 36—Mountainside cannot state a plausible claim for entitlement to benefits beyond those that it has already been paid without identifying the plan language on which it is basing its claim.  It is *__benefit language__* that is at the heart of Mountainside's bundling claim, yet no benefit language is cited anywhere is the Amended Complaint.

   Mountainside also seeks a declaration that "Defendants do not have the legal authority to recoup or offset alleged overpayments against unrelated claims for benefits and that the Defendants must immediately repay any amounts already deducted by United."  Am. Compl. ¶ 43.  As a preliminary matter, courts have repeatedly held that offsets are a permissible way to recover overpayments under ERISA, such that any attack on the authority of ERISA plans to recoup or offset overpayments has no basis in the law and must be dismissed.  *See, e.g., Stuart v. Metro. Life Ins. Co.*, 664 F. Supp. 619, 624 (D. Me. 1987) (upholding offset of ERISA benefits as "not arbitrary or capricious"), *aff'd,* 849 F.2d 1534 (1st Cir. 1988); *Pilger v. Sweeney*, 725 F.3d 922, 926 (8th Cir. 2013) (upholding offset of ERISA benefits due to overpayment); *Spray v. UNUM Life Ins. Co. of Am.*, 749 F. Supp. 800, 805-06 (W.D. Mich. 1989) (same); *Rellou v. JP Morgan Chase Long-Term Disability Plan*, No. 07–CV–1334 (KMK), 2009 WL 3151230, at *5-6 (S.D.N.Y. Sept. 30, 2009) (same), *aff'd sub nom. Rellou v. Dir. of Human Res.*, 439 F. App'x 21 (2d Cir. 2011); *Calloway v. Pac. Gas & Elec. Co.*, 800 F. Supp. 1444, 1448–49 (E.D. Tex. 1992) (offsetting of ERISA "benefits [due to overpayment] was proper

under the plan"); *Lessard v. Metro. Life Ins. Co.*, 568 A.2d 491, 497 (Me. 1989) (affirming "recover[y] [of] overpayments made to a beneficiary by withholding future amounts due the beneficiary"); *see also* Restatement (Second) of Trusts § 254 cmt. e. (2012) ("If the trustee makes an overpayment out of the trust estate to one of several beneficiaries, the trustee . . . is entitled to a charge upon the beneficiary's interest for the amount of the overpayment, and he is under a duty to the other beneficiaries . . . to enforce such a charge . . . .").

Mountainside also purports to attack the specific method that United used to recoup the overpayments, alleging that United cannot "offset the alleged overpayments against *unrelated* claims for benefits." Am. Compl. ¶ 43 (emphasis added). The U.S. Court of Appeals for the Fifth Circuit has held that there is nothing impermissible about this offset methodology. *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 727 (5th Cir. 2010) (upholding Blue Cross Blue Shield's use of cross-plan offsets). The sole authority Mountainside cites for the position that the method is "wrongful and/or illegal," Am. Compl. ¶ 32, is *Peterson v. UnitedHealth Grp. Inc.*, which merely held that offsetting against unrelated claims must be supported by authorizing plan language. 242 F. Supp. 3d 834, 845-46 (D. Minn. 2017). But Mountainside does not even identify the plans with respect to which it is suing, much less plead that those plans do not contain language authorizing the practice. Indeed, Mountainside cannot possibly claim any injury arising from this methodology unless the amounts that United recouped were not in fact overpaid, but as noted above, Mountainside's bundling allegations fail to establish Mountainside's entitlement to the benefits in question.

16

Mountainside's sparsely pleaded and conclusory Count I accordingly must be dismissed.

## II.   MOUNTAINSIDE'S STATE LAW CLAIMS MUST LIKEWISE BE DISMISSED.

The latter portion of Mountainside's Complaint raises a slew of Connecticut state law claims.  None of these claims can survive a motion to dismiss.  First, Mountainside's state law claims are preempted under ERISA's dual preemption doctrines as to the ERISA plans implicated by its Amended Complaint.  Second, on the merits, none of Mountainside's state law claims is sufficiently pleaded. Accordingly, these claims must be dismissed.

### A.   Mountainside's state law claims are preempted.

Mountainside's state law claims are preempted by ERISA with respect to all ERISA plans encompassed by the Amended Complaint.  There are two types of preemption under ERISA:  complete preemption and express preemption.  *E.g., Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 236 (2d Cir. 2014).  Under complete preemption, ERISA preempts any state law cause of action that has the effect of duplicating or supplanting a remedy available under ERISA.  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 206 (2004) ("[S]tate causes of action that duplicat[e] or fal[l] within the scope of an ERISA § 502(a) remedy are completely pre-empted . . . ." (quotation omitted)).  Under express preemption, ERISA preempts any state law in so far as it "relates" to any ERISA plan.  *E.g., Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016).  Mountainside's claims are preempted under both doctrines.

First, under Second Circuit precedent, all of Mountainside's state law claims are *completely preempted* by ERISA. *See Gianetti v. Blue Cross & Blue Shield of CT., Inc.*, 351 F. App'x 520, 522 (2d Cir. 2009) (dismissing Connecticut "fraud, misrepresentation, and CUTPA [Connecticut Unfair Trade Practices Act] claims" as preempted by ERISA) (Count II); *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (affirming dismissal of unjust enrichment and contract claims as completely preempted under ERISA) (Count V); *Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 10 (2d Cir. 1992) (holding that ERISA completely preempted a negligent misrepresentation claim) (Count III); *see also Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, 813 F.3d 1333, 1338 (11th Cir. 2015) (dismissing as preempted claims related to oral representations concerning ERISA plan coverage because those claims were "tether[ed]" to an ERISA plan). That is because Mountainside's state law claims all "concern the existence or extent of benefits under an ERISA-regulated employee benefit plan," which is enough to trigger ERISA's expansive complete preemption doctrine. *Gianetti*, 351 F. App'x at 522; *see also* Am. Compl. ¶¶ 49 (speaking of plan "benefits"), 52 (concerning payments "for the services at issue"), 56 (concerning United's payments made pursuant to patients' plan terms), 60 (concerning requirements of patients' plans). Because Mountainside's state law claims seek to supplant or circumvent ERISA's remedial scheme, these claims are preempted and must be dismissed. *See, e.g.*, *Davila*, 542 U.S. at 206.

Second, Mountainside's Count II is also *expressly preempted* under ERISA, as the specific statute Mountainside invokes impermissibly "relates" to ERISA

plans.  *E.g.*, *Gobeille*, 136 S. Ct. at 943.  As the Supreme Court recently explained, state laws impermissibly "relate" to ERISA plans insofar as they affect the uniform administration of ERISA plans.  *Id.*  In Count II, Mountainside brings claims under Conn. Gen. Stat. § 38a-815 *et seq.*[6], alleging that United committed unfair trade practices through "cross-plan offsetting," "recouping" overpayments, "threatening" to recoup overpayments, and forcing Mountainside to bring this lawsuit.  Notwithstanding the fact that Mountainside nowhere explains how these acts constitute unfair trade practices under Connecticut law (*see infra* at 20-21), even if Connecticut law did proscribe the alleged conduct, such a law would affect uniform plan administration and thus be preempted under ERISA.  *E.g.*, *Gobeille*, 136 S. Ct. at 943.  This is because the manner in which ERISA plans settle claim disputes is an essential part of ERISA plan administration.  *Cummings v. Thomas Indus., Inc.*, 812 F. Supp. 99, 101 (W.D. Ky. 1993) (Kentucky's unfair claim settlement statute is expressly preempted by ERISA).  Forcing plan administrators to use different overpayment recovery and claim settlement procedures depending on the jurisdiction is the exact kind of plan administration issue that ERISA's express preemption provision is meant to prevent.  *See id.*; *Gobeille*, 136 S. Ct. at 943.  ERISA thus expressly preempts Mountainside's unfair trade practices claim, at least to the extent that Connecticut law even proscribes the conduct that Mountainside alleges.

---

[6] Mountainside's Complaint references Conn. Gen. Stat. § 38s-815 (Am. Compl. ¶ 48), which does not exist.  United assumes that Mountainside intended to reference Conn. Gen. Stat. § 38a-815 *et seq.*, a statute concerning unfair insurance practices, but Mountainside should be made to clarify this point.

### B.    Mountainside's state law claims fail to state a claim.

Each of Mountainside's state law claims amount to nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which are not entitled to an assumption of truth, and which do not meet Rule 8 pleading standards. *Ashcroft v. Iqbal*, 556 U.S. 662, 556 U.S. at 678-80 (2009). Each of the state law counts of the Complaint must be dismissed because they fail to state a claim, and do not show any plausible entitlement to relief.

### i.    *Count II is inscrutably conclusory and implausible.*

Count II in Mountainside's Amended Complaint is even less clear than it was before. Once again, Mountainside claims that United violated a non-existent statute: Conn. Gen. Stat. § 38s-815 does not exist. Presumably, Mountainside is referring to Conn. Gen. Stat. § 38a-815, Connecticut's unfair insurance practices statute. But in support of its contention that Mountainside violated this statute, Mountainside merely includes a list of actions allegedly taken by United and labels them as violations of CUTPA without any explanation. Specifically, Mountainside asserts that United violated CUTPA by: engaging in cross-plan offsetting, "threatening" unspecified "wrongful" conduct, "forcing Mountainside to bring this lawsuit," and "[i]nserting and/or relying upon anti-assignment provisions." Am. Compl. ¶ 48. Without providing any explanation as to how any of this conduct constitutes an unfair trade practice under Connecticut law, or which specific provisions of CUTPA the alleged conduct violated, Count II is not

sufficiently pleaded.[7]  *Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Pleadings must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." (quotation omitted)); *AT Engine Controls, Ltd. v. Goodrich Pump & Engine Control Sys., Inc.*, 637 F. App'x 645, 651 (2d Cir. 2016) (affirming dismissal of complaint that "did not provide [defendant] with sufficient notice of the CUTPA claim asserted against it"); *Ferrari v. U.S. Equities Corp.*, No. 3:13-cv-00395 (JAM), 2014 WL 5144736, at *3 (D. Conn. Oct. 14, 2014) (holding that CUTPA claims must be pled "with particularity to allow evaluation of the legal theory upon which the claim lies" (quotation omitted)).  Count II must be dismissed.

---

[7] To the extent that Mountainside is trying to enforce plan terms or alleging that the plan terms themselves violate Connecticut law, any such claims should be dismissed as to ERISA-governed plans or to plans governed by the laws of other states (i.e., plans to which Connecticut law has no application).  *See* Ex. 3 at 3.3 ("To the extent that state law applies, the laws of the State of Ohio are the laws that govern the Policy."); Ex. 4 at 4.3 ("To the extent that state law applies, the laws of the Commonwealth of Virginia are the laws that govern the Policy.); Ex. 5 at 5.3 ("To the extent that state law applies, the laws of the State of New York are the laws that govern the Policy."); Ex. 6 at 6.3 ("To the extent that state law applies, the laws of the State of Commonwealth of Pennsylvania are the laws that govern the Policy."); Ex. 7 at 7.3 ("To the extent that state law applies, the laws of the State of New York are the laws that govern the Policy."); Ex. 8 at 8.3 ("We are delivering the Policy in the State of New Jersey and the Policy is subject to the laws of New Jersey."); Ex. 9 at 9.3 ("To the extent that state law applies, the laws of the State of Texas are the laws that govern the Policy."); Ex. 10 at 10.3 ("To the extent that state law applies, the laws of the State of Wisconsin are the laws that govern the Policy.").

ii.   *Count III fails for vagueness.*

Mountainside's Count III—a claim for negligent misrepresentation—fails to plead *any* misrepresentation at all.  Under Connecticut law, the elements of negligent misrepresentation are that:

> [T]he defendants (1) supplied false information; (2) failed to exercise reasonable care in obtaining or communicating the information to the plaintiffs; (3) supplied the information to induce the plaintiffs to act on it; and (4) that the plaintiffs justifiably relied on the false information to their detriment.

*Bukowski v. Safeco Ins. Co. of Am.*, No. CV064008977, 2008 WL 4014222, at *10 (Conn. Super. Ct. July 9, 2008).  Here, Mountainside merely alleges that United represented that it "would pay for the services at issue" while making "no mention" that the plans would pay for the services on a bundled basis.  Am. Compl. ¶ 52.  This cannot be the basis of a negligent misrepresentation claim, which requires an actual false *representation*—i.e., "suppl[ying] false information."  *Bukowski*, 2008 WL 4014222, at *10.  Nowhere does Mountainside allege that United represented that it would pay for the services on an unbundled basis, or that United made any other representation that it did not honor—that is, Mountainside does not allege that United supplied, or that Mountainside relied on, any "false information," as is required to state a claim for negligent misrepresentation.  *Id.*  Count III is implausible on its face and must be dismissed.

iii.   *Count IV fails for vagueness.*

In Count IV, Mountainside brings a claim for promissory estoppel, alleging that United's recoveries of overpayments were "inconsistent with United's representation that it would pay[.]"  Am. Compl. ¶ 56.  Substantively, this claim appears indistinguishable from Mountainside's negligent misrepresentation

22

claim, and as with that claim, Mountainside fails to identify *any* promise on the part of United that United did not honor.  Merely stating that United's actions were inconsistent with its representation that it would pay does not form the basis of a plausible promissory estoppel claim.  *Iqbal*, 556 U.S. at 678.  Mountainside does not allege that United promised to pay any specific amount or that it promised anything else that it later failed to honor.  Again, Mountainside must provide enough factual detail to put United on notice of the conduct that it must defend.  *Twombly*, 550 U.S. at 555.  Count IV does not do this and must be dismissed.

> ### iv.   *Count V fails for vagueness and fails to state a plausible claim.*

Count V alleges a claim for unjust enrichment.  In Connecticut, "[p]laintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment."  *Am. Express Centurion Bank v. Head*, 971 A.2d 90, 94 (Conn. App. Ct. 2009) (quotation omitted).  Mountainside has not—and cannot—meet these requirements.  Mountainside does not allege that it did anything that would qualify, as a matter of law, as a benefit to United.  *See Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) ("The insurance company derives no benefit . . . [, but rather,] a ripened obligation to pay money to the insured—which hardly can be called a benefit.");  *Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*, No. 14-81271-CV, 2015 WL 2198470, at *5 (S.D. Fla. May 11, 2015) (A healthcare "provider who provides services to an insured does not benefit the insurer.");  *Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, No. 13-21895-

CIV, 2013 WL 3810617, at *4 (S.D. Fla. July 22, 2013) ("[A provider] can hardly be said to have conferred any benefit, even an attenuated one, upon the Plan's insurer by providing Plan beneficiaries with health care services."); *see also MCM Prods. USA, Inc. v. Botton*, 16 Civ. 1616, 2016 WL 5107044, at *8 (S.D.N.Y. Sept. 19, 2016) (dismissing unjust enrichment claim for failing to allege sufficient "factual content" to allow for an inference of liability).  Count V must be dismissed.[8]

### C.  PARAGRAPHS 16 THROUGH 18 OF MOUNTAINSIDE'S AMENDED COMPLAINT SHOULD BE STRICKEN.

Finally, paragraphs 16 through 18 should be stricken from Mountainside's Complaint because they contain allegations concerning prior litigation that has no possible relevance to this lawsuit.  The Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Paragraphs 16, 17, and 18 of Mountainside's Complaint are wholly immaterial and impertinent.  Paragraph 16 contains allegations that United has previously been the subject of investigations related to the use of a database that has no bearing or relation to Mountainside's underlying claims.  Paragraph 17 discusses a settlement related to the same database and contains nothing relevant to Mountainside's underlying claims.  And finally, Paragraph 18 makes allegations concerning general insurance industry practices and statistics that again have no bearing on Mountainside's claims.  The purpose of the vagaries

---

[8] In addition, Mountainside cannot shoehorn this state law claim into its patient assignments, as Mountainside does not allege that its patients assigned it claims for unjust enrichment.

contained in these paragraphs appears to be to place United in a negative light, but such assertions have no place in legal pleadings, and the paragraphs should be stricken.  *See, e.g., Kent v. AVCO Corp.*, 815 F. Supp. 67, 71 (D. Conn. 1992) ("References to other litigation and the context in which they are made, are improper and irrelevant when they are asserted in an unrelated complaint before the court." (quotation omitted)); *Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 68 (E.D.N.Y. 2011) (striking "references to a preliminary investigation that is unrelated to the allegations in the complaint and that did not result in an adjudication on the merits or legal or permissible findings of fact" (quotation omitted)).

## <u>CONCLUSION</u>

For these reasons, this Court should dismiss Mountainside's Amended Complaint.

Respectfully submitted,

UNITEDHEALTH GROUP INC.,
UNITEDHEALTHCARE, INC.,
OPTUM, INC.,
OPTUMHEALTH, INC.,
UNITEDHEALTHCARE SERVICES, INC.,
UNITED BEHAVIORAL HEALTH, AND
OPTUMINSIGHT, INC.

By: */s/ Theodore J. Tucci*                .
Theodore J. Tucci (ct05249)
Kelly Frye Barnett (ct29817)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
Telephone: (860) 275-8331
Facsimile: (860) 275-8299
ttucci@rc.com
kbarnett@rc.com

By: */s/ Kevin D. Feder*
Gregory F. Jacob (phv09541)
Kevin D. Feder (phv09542)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Tel:  202.383-5300
Fax: 202.383-5414
gjacob@omm.com
kfeder@omm.com

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 21, 2018, I electronically filed the foregoing with the Clerk of Court, using CM/ECF.  I also certify that the foregoing document was served on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF, or via other means if requested.

_____/s/ Kelly Frye Barnett_____
Kelly Frye Barnett

27