# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MC1 HEALTHCARE, INC., d/b/a | ) | CIVIL NO. 3:17-CV-01909 (KAD) |
| MOUNTAINSIDE TREATMENT | ) | |
| CENTER | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED HEALTH GROUP, INC., *et al.* | ) | |
| *Defendants* | ) | MAY 7, 2019 |

## MEMORANDUM OF DECISION RE:
## MOTION TO DISMISS AND MOTION TO STRIKE
## THE AMENDED COMPLAINT [ECF N0. 55]

Kari A. Dooley, United States District Judge

The Plaintiff, MC1 Healthcare Inc., d/b/a Mountainside Treatment Center ("Mountainside"), is a healthcare services provider that has treated individuals who are beneficiaries under benefit plans covered and/or administered by the seven Defendants[1] (collectively, "United"). In the Amended Complaint, Mountainside asserts five causes action, each challenging United's efforts to recoup purported overpayments it made to Mountainside. United has moved to dismiss this action pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. United has also moved pursuant to Rule 12(f) to strike Paragraphs 16 through 18 of the Amended Complaint. For the reasons set forth below, the Motion to Dismiss is GRANTED in part and DENIED in part and the Motion to Strike is GRANTED in part and DENIED in part.

---

[1] United Health Group, Inc., United Healthcare, Inc., Optum, Inc., Optumhealth, Inc., UnitedHealthCare Services, Inc., United Behavioral Health, Inc., and OptumInsight, Inc.

**Factual Allegations**

For purposes of this motion, the Court accepts the allegations in the Amended Complaint as true and they are set forth as follows. Mountainside is a healthcare services provider that provides treatment for, among other things, substance abuse. (Amended Compl. at ¶¶ 2–3.) Prior to providing such services, Mountainside requires its prospective patients to sign a contract that contains the following "Assignment of Benefits" provision:

**Assignment of Benefits**

**\*\*\***

**Permission to Bill**

I, [patient's name], permit Mountainside Treatment Center, to bill my insurance company for any facility and professional charges rendered during my treatment stay.

**Assignment of Benefits**

I, [patient's name], am requesting that my Insurance company submit any payment related to my care at this rendering facility to the Mountainside Treatment Center at PO Box 717, Canaan, CT 06018.

**Authorization to Appeal**

I, [patient's name], authorize Mountainside Treatment Center to appeal any adverse decisions provided by my insurance company on my behalf.

(*Id.* at ¶ 23.)

If the prospective patient has insurance, Mountainside calls the insurance company to confirm that the proposed treatment is covered under the terms of the relevant policy or benefit plan. (*Id.* at ¶ 24.) Mountainside also intermittently contacts the insurance company for additional approvals as the patient's treatment regimen progresses towards discharge. (*Id.*) Mountainside relies on the insurance company's approvals in determining the percentage or amount of the services costs that need to be billed directly to the patient. (*Id.*)

During the relevant time period, Mountainside provided services to beneficiaries of benefit plans covered and/or administered by United. (*Id.* at ¶¶ 18–21.) Mountainside does not have a contract with United and is an out-of-network provider under the plans. (*Id.* at ¶ 22.) When billing United, Mountainside used a "UB04" form, which indicates that payment is requested pursuant to an assignment. (*Id.* at ¶ 28.) Initially, United tendered payment to Mountainside for covered services. (*Id.*) On or about May 5, 2017, however, United sent a letter to Mountainside accusing it of improperly billing services on an "unbundled" basis rather than a "bundled" basis. (*Id.* at ¶ 29.) On May 25, 2017, Mountainside responded that, as an out-of-network provider, it was not required to bundle or unbundle any of its services. (*Id.* at ¶ 31.) Thereafter, United began recouping its purported overpayments by not paying for services for other insureds ("offsetting"), including services provided to insureds who are not members of the same plans under which the alleged overpayments were made ("cross-plan offsetting"). (*Id.* at ¶ 32.)

**Procedural History**

On November 14, 2017, Mountainside initiated this action. On March 26, 2018, United filed its first motion to dismiss for largely the same reasons asserted in the instant motion to dismiss. On April 13, 2018, the parties reached a stipulation whereby Mountainside would file an amended complaint, which it did on April 30, 2018.

The Amended Complaint is the operative complaint. Like the original complaint, it seeks declaratory, monetary, and injunctive relief pursuant to § 502(a) of the Employee Retirement Income Security Act ("ERISA"), codified at 29 U.S.C. § 1132 (Count One). (Amended Compl. at ¶¶ 38–44.) It also contains four state law claims for violation of the Connecticut Unfair Trade Practices Act ("CUTPA") and Connecticut Unfair Insurance Practices Act ("CUIPA") (Count Two), negligent misrepresentation (Count Three), promissory estoppel (Count Four), and unjust

enrichment (Count Five).  (*Id*. at ¶¶ 45–62).  Each count of the Amended Complaint seeks payment for services rendered and in doing so challenges United's right to recoup the disputed fees.  Count One and Count Two further challenge United's use of cross-plan offsetting for its recoupments.

United moves to dismiss this action in its entirety on several grounds.  With respect to the ERISA claim, United principally argues that Mountainside, as a provider, cannot assert a claim under ERISA.  With respect to the state law claims, United argues that Mountainside has failed to plead these claims adequately.  Alternatively, United argues that ERISA preempts each of these claims.  The Court will address each of United's arguments as necessary.

**United's Motion to Dismiss**

### Standard of Review

As an initial matter, United originally moved to dismiss Count One of the Amended Complaint for lack of standing pursuant to Rule 12(b)(1).  United's challenge, however, is to Mountainside's "statutory standing" — *i.e.*, its ability to assert a claim under ERISA — not its constitutional standing under Article III of the United States Constitution.  "The Supreme Court has recently clarified . . . that what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff has a cause of action under the statute.  This inquiry does not belong to the family of standing inquiries because the absence of a valid cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional *power* to adjudicate the case."  *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (citations omitted; ellipses omitted; internal quotation marks

omitted).  Accordingly, United's motion to dismiss Count One for lack of "statutory standing"[2] is properly analyzed under Rule 12(b)(6), not Rule 12(b)(1).

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678.  Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

### Count One:  ERISA

United first challenges Mountainside's ability to assert claims based on its patients' rights under their benefit plans and ERISA, arguing that the "Assignment of Benefits" form does not transfer any of the patients' rights to Mountainside.  Mountainside counters that this form constitutes a legal assignment of its patients' rights under their plans and, therefore, confers derivative standing to sue under ERISA.  For purposes of the motion to dismiss, it is deemed true that all of Mountainside's patients executed the Assignment of Benefits form detailed above.

---

[2] "Because the Supreme Court made clear in *Lexmark* [*Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)] that the 'statutory standing' appellation is 'misleading' and 'a misnomer,'" the Second Circuit has instructed courts to avoid this appellation.  *Am. Psychiatric Ass'n*, 821 F.3d at 359.

Therefore, if United is correct that the Assignment of Benefits form does not convey any rights under ERISA, whatever claims Mountainside purports to bring under ERISA must be dismissed with prejudice. If the Court does not agree with United's argument, however, then the Court must determine whether Count One is adequately pleaded.

### *The Assignment of Benefits Form*

Pursuant to Section 502 of ERISA, a plan participant or beneficiary may bring a civil enforcement action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also Simon v. Gen. Elec. Co.,* 263 F.3d 176, 177 (2d Cir. 2001) (per curiam). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."[3] 29 U.S.C. § 1002(2)(B)(8). "A beneficiary is best understood as an individual who enjoys rights equal to the participants to receive coverage from the healthcare plan. A participant's spouse or child is the most likely candidate for this term." *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 257 (2d Cir. 2015). The "right to payment" for covered services, however, "does not a beneficiary make." *Id.* at 258 (holding that healthcare providers are not beneficiaries under ERISA).

Generally, only the parties enumerated in Section 502 may sue for relief under ERISA. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 27 (1983); *Simon,* 263 F.3d at 177. A "narrow exception" to this rule exists for "healthcare providers to whom a [participant or] beneficiary has assigned his claim in exchange for health care." *Montefiore Med.*

---

[3] A "participant" is "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(2)(B)(7). In Count One, Mountainside purports to bring claims on behalf of only "beneficiaries."

*Ctr. v. Teamsters Local 272,* 642 F.3d 321, 329 (2d Cir. 2011); *see also Simon,* 263 F.3d at 178; *I.V. Serv. of Am. Inc. v. Trustees of the Am. Consulting Eng'r Council,* 136 F.3d 114, 117 n.2 (2d Cir. 1998). To assert an ERISA claim, therefore, a provider must establish that it has a valid assignment of the rights asserted in the complaint that comports with the terms of the benefit plan(s) at issue. *See, e.g., McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 147 (2d Cir. 2017) (holding that assignment to out-of-network provider was "a legal nullity" in light of anti-assignment provision in plan); *see also Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d. 698, 700 (7th Cir. 1991) ("Because ERISA instructs courts to enforce strictly the terms of plans, an assignee cannot *collect* unless he establishes that the assignment comports with the plan." [citation omitted]); *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.,* 371 F.3d 1291, 1295 (11th Cir. 2004) ("we are persuaded by the reasoning of the majority of federal courts that have concluded that an assignment is ineffectual if the plan contains an unambiguous anti-assignment provision"); *City of Hope Nat. Med. Ctr. v. HealthPlus, Inc.,* 156 F.3d 223, 229 (1st Cir. 1998) ("Consistent with the other circuits which have addressed this issue, we hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties.").

"Assuming a plan does not dictate the form of a valid assignment or bar assignment altogether, a court may draw upon federal common law in assessing whether any purported assignment was effective." *Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 351 (S.D.N.Y. 2013) (citing *I.V. Servs. Of Am. Inc.,* 136 F.3d at 117 n.2). Here, as discussed *infra,* the Court has no way of knowing the extent to which the multitude of plans implicated in Count One dictate the form of assignments or bar assignments altogether.[4] The Court

---

[4] United has represented that eighteen of the twenty one plans it has identified contain anti-assignment provisions. Although Mountainside contests the accuracy of that plan identification, it does not dispute that at least

leaves aside this issue for purposes of assessing whether the Assignment of Benefits form is an assignment because if, as posited by United, the Assignment of Benefits form does not assign any rights under ERISA, the extent to which the plans allow or disallow assignments is irrelevant.

"An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance." Restatement (Second) Contracts § 317 (1981). "No words of art are required to constitute an assignment; any words that fairly indicate an intention to make the assignee owner of a claim are sufficient. . . ." 29 S. Williston, Contracts § 74:3 (4th Ed.); *accord Sunset Gold Realty, LLC v. Premier Bldg. & Dev., Inc.,* 133 Conn. App. 445, 452–53 (2012); *see also DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.,* 852 F.3d 868, 876 (9th Cir. 2017) ("These forms do not use the terms 'assign' or 'assignment,' but no such specific language is necessary to effectuate an assignment of rights."). Valid assignments may take a variety of forms; Restatement (Second) of Contracts § 324; *see Montefiore Med. Ctr.,* 642 F.3d at 329 n.8; unless a statute or contract provides otherwise; Restatement (Second) of Contracts § 324; *see McCulloch Orthopaedic Surgical Servs., PLLC,* 857 F.3d at 147 (looking to terms of benefit plan to determine whether assignment was valid).

Some courts have held that assignments of rights under ERISA must be express and, therefore, concluded that forms authorizing or directing an insurance company to pay benefits directly to a provider do not constitute valid assignments under ERISA. *E.g.*, *AvuTox, LLC v. Cigna Health & Life Ins. Co.*, No. 5:17-cv-00250 (BO), 2017 WL 6062257, at *3 (E.D.N.C. Dec. 7, 2017) ("In order for an assignment under ERISA to be valid, it must be express."); *see Peterson v. UnitedHealth Grp.*, No. 14-cv-02101 (PJS) (BRT), ECF No. 60 at 37–39 (D. Minn. Jan. 23,

_____

some of the plans implicated by the complaint contain provisions restricting or barring assignments. Instead, Mountainside argues in its complaint and opposition to the motion to dismiss that these provisions are unenforceable.

2015) (oral ruling rejecting plaintiff's that argument direction of payment form constituted assignment of benefits). On the other hand, numerous other courts have concluded that language authorizing an insurance company to pay a provider directly constitutes an assignment of the right to payment and the corollary right to sue under ERISA for nonpayment. *E.g.*, *Brown v. BlueCross BlueShield of Tenn., Inc.*, 827 F.3d 543, 547 (6th Cir. 2016); *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 Fed. Appx. 169, 174–75 (3d Cir. 2015); *Dialysis Newco Inc. v. Cmty. Health Sys. Tr. Health Plan*, No. 5:15-cv-00272, 2017 WL 2591806, at *4 (S.D. Tex. June 14, 2017); *Dallas Cty. Hosp. Dist. v. Blue Cross Blue Shield of Tex.*, No. 3:05-cv-0582-BF(M), 2006 WL 680473, at *4 (N.D. Tex. Mar. 14, 2006).[5]

Here, United contends that the Assignment of Benefits form, despite being titled an "assignment," does not meet the requirements for a legal assignment because it merely requests that the insurance company submit payments directly to Mountainside. As a result, United argues that no reasonable patient would have understood himself to be irrevocably transferring his legal rights under ERISA or his plan to Mountainside by signing this form. Mountainside relies upon the cases cited above that have found to the contrary. It further posits that the Second Circuit when confronted with the issue will agree, as the Second Circuit recently suggested in *dicta* that a form authorizing an insurance company to pay medical benefits directly to a provider "normally would

---

[5] United contends that *Brown* and *Dialysis Newco* are unpersuasive because the insurance company in each of those cases conceded that there was a valid assignment. United is mistaken. In both cases, the insurance company made the same argument as United makes in this case — *i.e.*, that a form authorizing direct payment of benefits to a provider does not constitute an assignment of rights for the purposes of derivative standing to sue under ERISA. *Brown*, 827 F.3d at 546 ("Blue Cross argues that Harrogate's 'Assignment of Benefits Forms' provide only for direct payment and are therefore insufficient to grant an assignment of rights for purposes of derivative standing."); *Dialysis New Co. Inc.*, 2017 WL 2591806, at *4 ("DSI believes that it has this derivative standing because H.S. executed an 'Assignment of Benefits' form on his first day of treatment. Defendants disagree. They note that this assignment only authorized direct payment to DSI — it says nothing about the right to sue." [citation omitted]). In both cases, the court rejected this argument. *Brown*, 827 F.3d at 547 ("We therefore reverse the district court's holding that Harrogate's 'Assignment of Benefits Forms' were not valid assignments of benefits for the purpose of conferring derivative standing."); *Dialysis New Co. Inc.*, 2017 WL 2591806, at *4 ("In this circuit, the right to receive direct payment necessarily includes the right to sue for non-payment.").

constitute an assignment to the provider of the patient's right to payment." *McCulloch Orthopaedic Surgical Servs., PLLC*, 857 F.3d at 147.

Having considered the foregoing, the Court agrees with Mountainside that the Assignment of Benefits form constitutes a legal assignment of both the right to receive payment and the commensurate right to sue under ERISA for nonpayment. The Assignment of Benefits form notes in two locations that it is an "Assignment of Benefits," and it makes clear that the patient is authorizing its insurance company to receive bills from and submit payments directly to Mountainside. The patient further authorizes Mountainside to appeal any adverse decisions made by the insurance company concerning coverage. Though not a model of clarity, based on the foregoing terms and provisions, the Court is persuaded that the average patient would have understood that by signing this form he was transferring to Mountainside the right to seek and collect any benefits due under the patient's plan for the services about to be performed by Mountainside. The Court is similarly persuaded that, in doing so, this same patient would have understood himself to be forfeiting the right to seek and collect those same benefits.

United next contends that even if the Assignment of Benefits form is a legal assignment of the right to payment and the right to sue under ERISA for non-payment, it does not encompass the right to pursue injunctive relief.[6] Specifically, United asserts that nothing in the language of the Assignment of Benefits form suggests that the patient is assigning the right to seek prospective, injunctive relief. Mountainside responds that ERISA expressly authorizes equitable relief and, therefore, it can seek an injunction as an assignee of an ERISA benefit. The Court agrees with United.

---

[6] United does not challenge whether the Assignment of Benefits form, if it is a valid assignment, conveys the right to seek the declaratory relief sought in the Amended Complaint.

"Not all ERISA assignments convey the same rights." *Rojas*, 793 F.3d at 258. The Assignment of Benefits form conveys the narrow right to payment for the services about to be rendered by Mountainside. Nothing in the Assignment of Benefits form suggests that the patient is assigning (and thereby forfeiting) his right to seek prospective, injunctive relief concerning United's recoupment practices. Because the scope of Mountainside's derivative standing is necessarily determined by the scope of its assignment, Mountainside does not have derivative standing to seek injunctive relief. *DB Healthcare, LLC*, 852 F.3d at 877 (holding assignment of right to insurance benefits did not confer right to seek injunction prohibiting insurance company from recouping alleged overpayments through offsetting); *see Rojas*, 793 F.3d at 258 (holding that assignment of patients' right to payment conferred "*only* the right to pursue the participants' claims for payment, not other categories of ERISA claims"); *Premier Health Ctr., P.C. v. UnitedHealth Grp.*, 292 F.R.D. 204, 218–19 (D.N.J. 2013) (holding assignment of benefits from a patient for services rendered by provider "cannot logically imply the right to assert ERISA claims for injunctive relief" regarding insurance company's utilization review process). Thus, that portion of the Amended Complaint and Prayer for Relief which seeks injunctive relief is dismissed with prejudice.

### *The Deficiencies in Mountainside's Pleading in Count One*

Having determined that the Assignment of Benefits form, on its face, assigns the patients' right to payment, the Court must next address certain critical deficiencies in Mountainside's pleading of Count One.

As previously discussed, an ERISA claim lies where (1) a participant or beneficiary (2) to a plan covered by ERISA (3) seeks to recover benefits due to him or her under the terms of the plan. 29 U.S.C. § 1132(a). Providers do not ordinarily have authority to bring a civil action under

ERISA. Instead, to sue under ERISA, Mountainside must establish that it has a valid assignment from a plan participant or beneficiary that comports with the terms of the relevant plan. *See Simon*, 263 F.3d at 177–78; *see also, supra, pp.* 6 – 11.

Here, Mountainside seeks to bring, by way of a single count, dozens of individual ERISA claims on behalf of numerous beneficiaries pursuant to numerous different benefit plans. Although the Amended Complaint seeks to challenge and enjoin United's recoupment practices, at its core, Mountainside seeks to collect what it claims to be owed under the relevant benefit plans for services provided to each individual patient. Yet, Mountainside fails to identify with sufficient particularity the assignor-beneficiaries whose claims it is asserting, the participants through whom the beneficiaries have benefits, or the identity of the plans under which such benefits are allegedly conferred. The mere fact that Mountainside is an assignee of numerous claims under benefit plans covered by ERISA does not give Mountainside the unfettered ability to challenge United's benefits payments or billing practices, wholly untethered from the patients in whose shoes Mountainside purports to stand and the plans which convey the rights Mountainside seeks to enforce.

The Amended Complaint does include two spreadsheets, which list, in redacted form, information about the patients who were the subjects of the alleged overpayments and recoupments.[7] It is not clear, however, whether Mountainside is asserting claims of patients whose treatment allegedly resulted in overpayments, the patients whose payments are being offset, or both. Mountainside also seems to aver that there might be additional, unknown patients whose rights it might also seek to enforce in this action. Permitting the complaint to proceed as drafted

---

[7] United has not filed an unredacted copy of its spreadsheets, under seal or otherwise. Because one of the spreadsheets contains a list of the overpayments as identified by United in its May 5, 2017, United has been able to identify the patients in that spreadsheet. With respect to the other spreadsheet, however, United stated at oral argument that it has been unable to determine who these patients are, and United's counsel represented that Mountainside's counsel has refused to provide the spreadsheet in unredacted form. The spreadsheets do not list any information about the plans themselves.

— without any specificity or clarity as to the beneficiaries, claims, or plans at issue — would, in the Court's view, be unfair.

The "principal function" of the pleading requirements embodied in Rule 8 of the Federal Rules of Civil Procedure "is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). When a complaint does not comply with Rule 8's requirements, "the court has the power, on its own initiative . . . to dismiss the complaint." *Id.* "The key to Rule 8(a)'s requirements is whether adequate notice is given." *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004). "[F]air notice [is] that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Id.* (internal quotation marks omitted). Rule 8 requires a plaintiff to "disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to ***know whether there is a legal basis for recovery***.'" *Kittay v. Kornstein,* 230 F. 3d 531, 541 (2d Cir. 2000) (emphasis added) (quoting *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991)). For these reasons, dismissal can be appropriate when a complaint is so "confusing as to 'overwhelm the defendants' ability to understand or to mount a defense.'" *Warner Bros. Entm't Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 269 (S.D.N.Y. 2007) (quoting *Wynder*, 360 F.3d at 80).

With these standards in mind, the Court concludes that Count One does not meet the pleading requirements of Rule 8.[8] Without knowing whose rights Mountainside purports to assert,

---

[8]Although United did not move to dismiss this action under Rule 8, it repeatedly raised concerns regarding Mountainside's failure to identify the patients and plans at issue in its supporting memoranda. United further requested that this action be dismissed because of the lack of "the information necessary to identify all of the patients and plans at issue."

The Court also raised its concerns regarding the structure and content of Count One at the hearing on the motion to dismiss and provided counsel with an opportunity to address those concerns. To the extent that Mountainside

or the plans under which those rights allegedly derive, United does not have fair notice as to the claims asserted and cannot defend the claims in a meaningful or orderly manner. By way of example, the terms of the individual plans might identify available defenses, such as the existence of anti-assignment provisions which might defeat Mountainside's ability to bring ERISA claims in the first instance.[9] *See, e.g.*, *McCulloch Orthopaedic Surgical Servs., PCCL*, 857 F.3d at 147 (determining whether assignments were effective based on the terms of the plans); *Merrick v. UnitedHealth Grp. Inc.*, 175 F. Supp. 3d 110, 121–123 (S.D.N.Y. 2016) (looking to plan terms to determine whether anti-assignment provisions invalidated provider's assignments and whether provider had viable equitable defenses to anti-assignment provisions). The plan provisions will also shed light on whether United's recoupments are improper. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue"); *Karl v. Asarco, Inc. &/or its Pension Bd.*, No. 93-cv-03819 (KTD), 1998 WL 107113, at *6 (S.D.N.Y. Mar. 11, 1998) ("Under ERISA, every employee benefit plan must be contained in a written instrument which governs the obligations and entitlements under that plan."), *aff'd sub nom. Karl v. Asarco Inc.*, 166 F.3d 1200 (2d Cir. 1998).

Accordingly, Count One is dismissed.[10] The dismissal is without prejudice to allow Mountainside to file a second amended complaint that includes sufficient information to put United

---

believes it has not had an adequate opportunity to address the Court's Rule 8 concerns, it may address this issue through a motion for reconsideration.

[9] Indeed, United argued in its motion to dismiss that the Assignment of Benefits form, if it is a legal assignment, will likely be void in many instances because of the anti-assignment provisions in many of United's plans. Because of the uncertainty concerning the patients and plans at issue in this litigation, the Court cannot take up this argument at this time.

[10] The Court is aware of cases where many patients' claims were combined into a single ERISA count. *E.g.*, *Texas Gen. Hosp., LP v. United Healthcare Servs., Inc.*, No. 3:15-cv-02096-M (BMGL), ECF No. 38 (N.D. Tex. Oct. 23, 2015); *Exact Sci. Corp., v. Blue Cross & Blue Shield of N.C.*, No. 1:16-cv-00125 (NCT)(LPA), ECF No. 16 (M.D.N.C. June 10, 2016). The problem presented by the Amended Complaint is principally one of substance, not form. In some of these other cases, the complaints contained much greater specificity concerning the subject matter

on fair notice of the patients whose rights are being asserted and the plans at issue in Count One. To accomplish this purpose, the second amended complaint could, for example, identify the assignor-patients whose rights are asserted in this action, although the names may be redacted so long as an unredacted version is provided to United. There may be other identifiers which would accomplish the same result, and the Court does not direct the precise manner by which the ERISA claims should be re-pled. Nor does the Court require any particular format for presenting the individual ERISA claims. The claims can be grouped by plan, or Mountainside could amend its claim to allege a separate count for each patient whose rights are asserted. In whatever manner Mountainside chooses to replead, the notice concerns at the core of Rule 8 must be adequately addressed.

### Count Two:  CUTPA/CUIPA

The Court next addresses United's argument that Count Two of the Amended Complaint fails to state a claim under CUTPA/CUIPA. The thrust of United's argument is that Count Two simply reiterates the allegations against United and, in a purely conclusory fashion, labels this conduct illegal without any explanation as to how it violates CUIPA. United also argues that ERISA preempts this claim. Mountainside avers that it has pleaded a plausible CUTPA violation and that Count Two is not preempted because it is based on United's representations and assurances during the course of their business relationship.

---

of the singular ERISA count and, therefore, did not raise Rule 8 concerns. *E.g.*, *Texas Gen. Hosp., LP*, No. 3:15-cv-02096-M (BMGL), ECF No. 38 at ¶¶ 41–43 & Exhibit A (appending and incorporating by reference a comprehensive spreadsheet detailing the specific non-payments and underpayments at issue in the litigation, including the policy and group numbers associated with each benefit claim at issue); *Exact Sci. Corp.,* No. 1:16-cv-00125 (NCT)(LPA), ECF No. 16 at ¶ 55 (appending and incorporating by reference a comprehensive spreadsheet detailing the specific underpaid claims at issue in the litigation, including the subscriber identification number associated with each benefit claim at issue). In other cases, the claim was pursued as a putative class action and, therefore, the lack of specificity in terms of the precise claims at issue was more tolerable. *E.g., High Street Rehabilitation, LLC v. Am. Specialty Health Inc.*, No. 2:12-cv-07243 (NIQA), ECF No. 91 (E.D. Pa. Dec. 23, 2015). Nevertheless, in light of the possible defenses already identified by United, the Court has significant concerns about the feasibility of adjudicating all of Mountainside's ERISA claims in a single count.

In Connecticut, the interplay between the CUTPA and CUIPA statutes is now well-settled. CUTPA prohibits the use of "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). It further provides for a private right of action. Conn. Gen. Stat. § 42-110g(a). CUIPA, in turn, "prohibits unfair business practices in the insurance industry and defines what constitutes such practices in that industry," but it "does not authorize a private right of action." *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 317 Conn. 602, 623 (2015). The Connecticut Supreme Court has determined, however, "that individuals may bring an action under CUTPA for violations of CUIPA." *Id.* "Because CUIPA provides the exclusive and comprehensive source of public policy with respect to general insurance practices, . . . unless an insurance related practice violates CUIPA or, arguably, some other statute regulating a specific type of insurance related conduct, it cannot be found to violate any public policy and, therefore, it cannot be found to violate CUTPA." *State v. Acordia, Inc.*, 310 Conn. 1, 37 (2013); *accord Artie's Auto Body, Inc.*, 317 Conn. at 624 ("as a general rule, a plaintiff cannot bring a CUTPA claim alleging an unfair insurance practice unless the practice violates CUIPA"). As a result, "the failure of the CUIPA claim is fatal to the CUTPA claim." *Artie's Auto Body, Inc.*, 317 Conn. at 624.

In light of the foregoing, the Court begins its analysis by determining whether Count Two plausibly alleges a CUIPA violation. Mountainside alleges that United violated CUIPA through a variety of recoupment-related conduct, by forcing it to commence this lawsuit, and by "[i]nserting and/or relying upon anti-assignment provisions in the United Plans as a means of attempting to defeat out-of-network claims against United of the type asserted by Mountainside." (Amended Compl. at ¶ 48.) Although Mountainside asserts that this conduct violates CUIPA, this conclusory allegation is not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mountainside has not

identified, and the Court has not located, any provision of CUIPA that prohibits the conduct alleged in Count Two. CUIPA does prohibit certain conduct with respect to claim settlement; Conn. Gen. Stat. § 38a-816(6); but it does not contain any prohibitions with respect to an insurance company's use of offsetting to recoup overpayments to providers. CUIPA also prohibits insurance companies from "compelling insureds to institute litigation to recover amounts due under an insurance policy"; Conn. Gen. Stat. § 38a-816(6)(G); but even if United's conduct falls within the scope of this provision, which it likely does not, Mountainside has not alleged that United engaged in this conduct "with such frequency as to indicate a general business practice"; *id*. § 38a-816(6). Finally, CUIPA does not prohibit the use of or reliance on anti-assignment provisions in insurance policies or benefit plans.

Because Mountainside has failed to allege a plausible CUIPA violation, its CUTPA claim necessarily fails. The deficiencies identified herein are not of the type that can be cured through amendment, nor does Mountainside seek the opportunity to amend. Count Two is dismissed with prejudice.

### Count Three: Negligent Misrepresentation and Count Four: Promissory Estoppel

United seeks dismissal of Count Three and Count Four because they are vague and fail to identify any false representations or promises made by United. Alternatively, United argues that ERISA preempts these claims. Mountainside responds that it has adequately pleaded these claims because it alleged that United promised to pay it a specific amount for its services. Because that representation or promise creates an independent legal duty, Mountainside asserts that these claims are not preempted by ERISA.

"To establish liability for negligent misrepresentation, a plaintiff must be able to demonstrate by a preponderance of the evidence: (1) that the defendant made a misrepresentation

of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Stuart v. Freiberg*, 316 Conn. 809, 821–22 (2015) (internal quotation marks omitted). To prevail on a claim for promissory estoppel in the ERISA context, a plaintiff must establish (1) "a promise," (2) "reliance on the promise," (3) "injury caused by the reliance," (4) "an injustice if the promise is not enforced," and (5) that "extraordinary circumstances" exist. *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 79 (2d Cir. 1996). "The promise must be sufficiently clear and definite such that the promisor could reasonably expect to induce reliance." *Seitz v. J. C. Penney Prop., Inc.*, No. 3:15-cv-01131 (VAB), 2017 WL 4316874, at *6 (D. Conn. Sept. 28, 2017) (citing *D'Ulisse–Cupo v. Bd. of Dir. of Notre Dame High Sch.*, 202 Conn. 206, 213 (Conn. 1987)); *accord Schonholz*, 87 F.3d at 79.

Mountainside essentially relies upon the same representation or promise from United for both claims — namely, a representation or promise to pay Mountainside a specific amount for approved services. Mountainside has alleged that United promised to pay for the services at issue and that it "relies upon United's approvals in determining the percentage or amount of the services provided to the patient/United Plan beneficiary, to directly bill to the client." The Court infers from these allegations that United communicates with Mountainside concerning the amount it will pay for the proposed services. That representation or promise to pay is sufficient to state a plausible claim for negligent misrepresentation and promissory estoppel.

The Court must next decide whether ERISA completely preempts these causes of action as a matter of law. In *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), the Supreme Court established a two-part test to determine whether a claim falls "within the scope" of § 502(a)(1)(B) and, therefore, is completely preempted. *Id.* at 210; *Montefiore Med. Ctr.*, 642 F.3d at 328.

"Specifically, claims are completely preempted by ERISA if they are brought (i) by 'an individual [who] at some point in time, could have brought his claim under ERISA § 502(a)(1)(B),' and (ii) under circumstances in which 'there is no other independent legal duty that is implicated by a defendant's actions.' The test is conjunctive; a state-law cause of action is preempted only if both prongs of the test are satisfied." *Montefiore Med. Ctr.*, 642 F.3d at 328 (quoting *Davila*, 542 U.S. at 210) (citation omitted; footnote omitted).

Under the *Davila* analysis, the Second Circuit has not adopted a *per se* rule regarding whether and when ERISA preempts claims for negligent misrepresentation and promissory estoppel. *Compare Montefiore Med. Ctr.*, 642 F.3d at 332 (holding representations made by insurance company during pre-approval process did not create a sufficiently independent legal duty under *Davila* where the plan expressly required pre-approval process) *with McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 150–51 (2d Cir. 2017) (noting that *Montefiore* did not adopt a *per se* preemption rule concerning statements made during pre-approval process and holding that provider's promissory estoppel claim was not preempted by ERISA); *see also id.* at 149–50 (collecting cases holding that promissory estoppel claim was not preempted by ERISA). The circumstances here are strikingly similar to those presented in *McCulloch.*

If, as United asserts, Mountainside has no derivative standing due to anti-assignment provisions in some of the plans at issue, then clearly the first prong is not met with respect to those claims. *See id.* at 146 ("McCulloch – an 'out-of-network' healthcare provider who plainly did not have a valid assignment for payment – is not the type of party who can bring a claim pursuant to §502(a)(1)(b)). Moreover, Mountainside has adequately pled "an independent legal duty" arising out of the alleged promise to pay for services. *See id.* at 150–51 (holding promissory estoppel

claim was not preempted where it was based on insurer's promise to reimburse at a specific rate, not the specific terms of the plan). Whether that alleged duty is inextricably intertwined in the benefit plans at issue, as was the case in *Montefiore*, must await further discovery and examination of the plans at issue. United can renew its preemption claim by way of summary judgment.

**Count Five: Unjust Enrichment**

Finally, United seeks dismissal of Count Five because Mountainside is not alleged to have conferred any benefit upon United, as is necessary to state a claim for unjust enrichment. Mountainside responds that United was benefited by the services it rendered to United's plan beneficiaries and that such a benefit is sufficient to give rise to a claim for unjust enrichment. The Court disagrees.

To prevail on a claim of unjust enrichment, the plaintiff "must prove (1) that the defendant was benefited, (2) that the defendant unjustly did not pay the plaintiff for the benefits, and (3) that the failure of payment was to the plaintiff's detriment." *Hall v. Bergman*, 296 Conn. 169, 182 n.7 (2010) (alterations omitted; internal quotation marks omitted) (quoting *Vertex, Inc. v. Waterbury*, 278 Conn. 557, 573 (2006)). A right of recovery under the doctrine of unjust enrichment is essentially based on principles of equity and restitution — "its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *Trenwick Am. Reinsurance Corp. v. W.R. Berkley Corp.*, 138 Conn. App. 741, 753 (2012).

In the Amended Complaint, Mountainside characterizes the "benefit" to United as the recoupments or offsets made by United. Yet, in opposing the motion to dismiss, Mountainside asserts that the benefit to United is Mountainside's treatment of United's plan beneficiaries. Neither of these purported benefits is sufficient to state a plausible claim for unjust enrichment.

First, it is readily apparent that Mountainside confers no benefit upon United when United uses self-help to recoup alleged overpayments. Such a claim defies logic.

Second, courts have repeatedly held that providers cannot bring unjust enrichment claims against insurance companies based on the services rendered to insureds. *E.g., Air Evac EMS Inc. v. USAble Mut. Ins. Co.*, No. 4:16-cv-00266 (BSM), 2018 WL 2422314, at *9 (E.D. Ark. May 29, 2018); *Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, No. 13-cv-21895 (JLK), 2013 WL 3810617, at *4 (S.D. Fla. July 22, 2013); *Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 11-cv-02775 (JBS) (JS), 2012 WL 762498, at *8–*9 (D.N.J. Mar. 6, 2012); *Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co.*, No. 6:03-cv-01121 (PCF), 2004 WL 6225293, at *6 (M.D. Fla. Mar. 8, 2004); *see Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 (E.D. Tex. 2011) (rejecting argument that *quantum meruit* claim could be sustained because plaintiff "provided valuable services to United by rendering medical services to individuals for whom United has a contractual obligation to pay health benefits"); *Travelers Indem. Co. of Connecticut v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) (dismissing *quantum meruit* claim based on insurance company's failure to pay full amount demanded by contractor for services performed for insured). As one court aptly explained:

> It is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services; indeed, what the insurance company gets is a ripened obligation to pay money to the insured — which hardly can be called a benefit.

*Travelers Indem. Co. of Conn.*, 150 F. Supp. 2d at 563. Although not binding, these decisions are persuasive.

Accordingly, Count Five is dismissed with prejudice.

**United's Motion to Strike**

United also moves to strike Paragraphs 16 through 18 of the Amended Complaint because the allegations contained therein are irrelevant and are intended only to disparage United. Mountainside responds that these allegations are relevant to its claims, including its CUTPA claim, and will not prejudice United.

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[T]he party moving to strike 'bears a heavy burden' and must show that '(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the issues in the case; and (3) permitting allegations to stand would result in prejudice to the movant.'" *Walczak v. Pratt & Whitney*, No. 3:18-cv-00563 (VAB), 2019 WL 145526, at *2 (D. Conn. Jan. 9, 2019) (quoting *Tucker v. Am. Int'l Grp.*, 936 F. Supp. 2d 1, 16 (D. Conn. 2013)). "Motions to strike under Rule 12(f) are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute. Furthermore, [t]o the extent that Defendants' aim is to avoid unduly inflaming and prejudicing the jury, the court may take into account that the Complaint will not be submitted to the jury." *Walczak*, 2019 WL 145526, at *2 (citations omitted; internal quotation marks omitted); *see also Gierlinger v. Town of Brant*, No. 13-cv-00370 (AM), 2015 WL 3441125, at *1 (W.D.N.Y. May 28, 2015) ("[B]ecause striking a [part] of a pleading is a drastic remedy . . . motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted.").

In Paragraph 16, Mountainside alleges that "United has a history of violating applicable law to the detriment of patients and providers, particularly out-of-network healthcare providers like Mountainside." It then discusses how several state attorney generals and insurance

commissioners have investigated and taken issue with United's Ingenix database, which it used to set reimbursement rates for medical providers. The Court agrees with United that the Ingenix litigation is irrelevant to this proceeding. As such, its only intended effect can be to prejudice United and therefore it is stricken. *Kent v. AVCO Corp.*, 815 F. Supp. 67, 71 (D. Conn. 1992) ("'References to other litigation and the context in which they are made, are improper and irrelevant' when they are asserted in an unrelated complaint before the court." [quoting *Reiter's Beer Distributors, Inc. v. Christian Schmidt Brewing Co.*, 657 F. Supp. 136, 145 (E.D.N.Y. 1987)]); *see also Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 68 (E.D.N.Y. 2011) ("references to a preliminary investigation that is unrelated to the allegations in the complaint and that did not result in 'an adjudication on the merits or legal or permissible findings of fact' is immaterial as a matter of law and serves no purpose other than to inflame the reader"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 218 F.R.D. 76, 79 (S.D.N.Y. 2003) ("Similarly, references to an Attorney General's conclusory report following a preliminary investigation in a case that never was presented for nor reached an adjudication upon the merits, are also immaterial under Rule 12(f).").

The Motion to Strike Paragraphs 17 presents a closer issue. The first half of Paragraph 17 focuses on the anti-assignment provisions in United's plans and United's (and other insurance company's) motivations in adding them to their benefit plans. Although this allegation might be relevant to Mountainside's claim that United's use of anti-assignment provisions violates CUIPA, the Court has already concluded that this conduct does not violate CUIPA and, therefore, this allegation is also irrelevant. Accordingly, the Motion to Strike the first two sentences of Paragraph 17 is granted. The Motion to Strike is denied, however, as to the remainder of Paragraph 17, which focus on United's use of cross-plan offsetting to recoup losses. Those allegations are germane to

whether, as alleged, payments are owed for services rendered and go to the heart of Mountainside's request for declaratory relief in Count One and is not irrelevant as a result.

Finally, United moves to strike Paragraph 18, which essentially describes the conduct at issue in this case — *i.e.*, United's cross-plan offsetting to recoup purported overpayments made to Mountainside. Because that allegation is clearly relevant to the claims and issues presented in the Amended Complaint, the Motion to Strike is denied as to Paragraph 18.

**Conclusion**

For the foregoing reasons, the Motion to Dismiss is GRANTED as to Counts Two and Five with prejudice and GRANTED as to Count One without prejudice. The Motion to Dismiss as to Counts Three and Four is DENIED. Mountainside may file an amended complaint consistent with this decision on or before June 21, 2019.

For the foregoing reasons, the Motion to Strike Paragraph 16 is GRANTED. The Motion to Strike the first two sentences of Paragraph 17 is GRANTED. The Motion to Strike the remaining allegations in Paragraph 17 and Paragraph 18 is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of May 2019.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE